UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD WINSTON, 658150,

    Petitioner,                                                Civil Action No. 2:13-cv-10155

v.                                                            HON. BERNARD A. FRIEDMAN

NOAH NAGY,[1]

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING PERMISSION TO APPEAL *IN FORMA PAUPERIS***

This matter is before the Court on petitioner Edward Winston's amended petition for a writ of habeas corpus brought under 28 U.S.C. § 2254 [docket entry 17]. Petitioner was convicted after a bench trial in Wayne County Circuit Court of two counts of second-degree murder, Mich. Comp. Laws § 750.316, and one count of possession of a firearm during commission of a felony. Mich. Comp. Laws 750.227b. Petitioner was sentenced to two concurrent terms of 26 to 50 years for the murder convictions and a consecutive 2-year term for the firearm conviction.

The petition asserts six grounds for relief: (1) the trial court violated petitioner's right to confrontation when it admitted a statement made to police by an eyewitness who was

---

[1]The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 U.S.C. § 2254. Petitioner has been transferred to the Lakeland Correctional Facility, where according to the Michigan Department of Corrections website, Noah Nagy is Warden.

murdered prior to trial; (2) appellate counsel was ineffective for failing to raise his third through sixth claims on direct appeal; (3) trial counsel was ineffective for failing to call defense witnesses, (4) the trial court erred in failing to warn a prosecution witness regarding his right against self-incrimination, (5) the trial court erred in failing to appoint an expert witness for petitioner, and (6) the evidence admitted at trial was insufficient to support petitioner's convictions.

Petitioner's claims are meritless or are barred by his procedural default in state court. Therefore, his petition will be denied. The Court will also deny a certificate of appealability and permission to appeal *in forma pauperis*.

**I. Background**

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct pursuant to 28 U.S.C. § 2254(e)(1):

> Defendant-Winston's conviction arises out of his commission of a gang-related shooting that left two people [Francois Fields and Felcia Anderson] dead and two others [Mack Law and Pierre Pulley] seriously injured from multiple gunshot wounds. Several neighbors identified two individuals, defendant and Mark Moore, as they ran from the scene. A few minutes later, other witnesses placed Moore and defendant at a local drug house; both were wearing dark clothes and hoodies. Moore had an AR 15 assault rifle and defendant had a 10 millimeter Glock handgun. Several weeks later, defendant admitted to [fellow A-Team gang member Charles] Spivey that he and Moore had murdered Fields. Soon after, Moore turned himself in. Defendant was apprehended in Arizona.
>
> One of the neighbors who witnessed the defendants running from the scene was Juanita Steward. She was Moore's aunt, and her son was defendant's best friend. Defendant had wanted to run into Steward's house, but she told him to keep running. At first, she did not want to give the police any information; she was afraid that the defendants would harm her. The police learned that she had valuable information about the murders and issued an investigative subpoena. At the interview, she was very nervous about whether Moore or defendant would find out that she had identified them as the killers.

> Because she was unavailable to testify, the prosecution moved to introduce the statement under oath that Steward had given to the police. She was unavailable because she had been murdered before the trial. The prosecution alleged that Steward had been murdered by Moore and defendant to keep her from testifying against them at trial. At an evidentiary hearing, Terrance, Steward's son, testified that he had received warnings from defendant regarding his mother. Defendant also asked Terrance what his mother had seen and whether she had talked to police. Steward's brother and her friend also testified that Steward had received threats from Moore and Defendant. The trial court granted the prosecution's motion over the objection of Defendant's counsel.

*People v. Winston*, 2011 WL 1377074, at *1–2 (Mich. Ct. App. April 12, 2011).

Following his conviction, petitioner filed an appeal of right. His appointed appellate counsel raising the following single claim on appeal:

> I. Whether the trial court denied [Winston] his Sixth Amendment right to confront his accuser when it admitted a prior statement of unavailable witness Juanita Steward erroneously holding that the statement was admissible under MRE 804(b).

The Michigan Court of Appeals affirmed petitioner's conviction in an unpublished opinion in April 2011. *Id*. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim that he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Winston*, 804 N.W.2d 333 (Mich. 2011) (table decision).

In January 2013, petitioner filed the instant petition for a writ of habeas corpus, raising the claim he presented to the state courts in his direct appeal. Petitioner also filed a motion to stay the case so that he could return to the state courts and pursue what are now his other five habeas claims. The Court granted the motion and petitioner filed a motion for relief from judgment

in the state trial court, raising his new claims. The trial court denied the motion for relief from judgment because petitioner's claims ran afoul of Mich. Ct. R. 6.508(d)(3) and were meritless.

Petitioner then filed an application for leave to appeal those claims to the Michigan Court of Appeals. The Michigan Court of Appeals denied the delayed application for leave to appeal, finding that petitioner alleged "grounds for relief that could have been raised previously and he has failed to establish good cause for failing to previously raise the issues, and has not established that good cause should be waived. MCR 6.508(D)(3)(a)." Rule 5 Materials Ex. 12. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, but it was denied with citation to Rule 6.508(D). *People v. Winston*, 877 N.W.2d 728 (Mich. 2016) (table decision).

Petitioner then returned to this case, filing a motion to lift the stay and reopen the case and a motion to amend his petition to add his second through sixth claims. The Court granted petitioner's motion to reopen. Respondent responded to the petition and petitioner replied to the response. The matter is now ready for decision.

**II. Standard of Review**

Under 28 U.S.C. § 2254(d)(1), if a state court considered the petitioner's claims on the merits, the Court may not grant relief unless the decision was contrary to or unreasonably applied clearly established Supreme Court law. "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth'" by the Supreme Court "or if it 'confronts a set of facts that are materially indistinguishable from a [Supreme Court decision] and nevertheless arrives at a'" different result. *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

4

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, even if the Court believes that the state court erred, it cannot grant relief "so long as 'fairminded jurists could disagree' on the correctness" of the decision. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain relief, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103 (internal quotation omitted). Critically, § 2254(d) guards against only the most "extreme malfunctions in the state criminal justice systems," and it is "not a substitute for ordinary error correction through appeal." *Id.*

### III. Analysis

**A. <u>Admission of Murdered Eyewitness's Police Statement</u>**

Petitioner's first claim asserts that the trial court violated his Confrontation Clause rights by admitting the police statement of Juanita Steward, who, pursuant to an investigative subpoena, told police that she saw petitioner run from the shooting scene. Petitioner argues that the prosecutor failed to show that petitioner was responsible for Steward's murder, and therefore the "forfeiture by wrongdoing" exception to the Confrontation Clause was erroneously applied.

The Michigan Court of Appeals rejected this claim on the merits:

> Defendant claims that he was denied his Sixth Amendment right when the prosecution was allowed to submit the statements that Steward had reluctantly given to police before she was ultimately murdered. This Court is only required to review issues that are

properly raised and preserved. *People v. Stanaway*, 446 Mich. 643, 694 (1994), cert den sub nom *People v. Caruso*, 513 U.S. 1121 (1995); *Mich Ed Ass'n v. Secretary of State*, 280 Mich. App. 477, 488 (2008). An issue is properly raised and preserved if it is addressed by the trial court. *People v. Metamora Water Serv, Inc*, 276 Mich. App. 376, 382 (2007), lv den 480 Mich. 1003 (2007). To preserve most issues, a party must object below. *People v. Pipes*, 475 Mich. 267, 277 (2006). Here, the prosecution made a motion to include Juanita Steward's statement under oath as evidence; defendant objected. The trial court held an evidentiary hearing and determined that Steward's statement under oath was admissible under MRE 804(b)(6). The issue was properly raised and preserved.

This Court reviews preliminary questions of law regarding admissibility of evidence de novo, while the decisions of the trial court regarding the admission of the evidence are reviewed for an abuse of discretion. *People v. Gursky*, 486 Mich. 596, 606 (2010). Generally, the appellate court defers to the trial court's judgment unless the trial court's decision results in an outcome outside of the range of principled outcomes. *People v. Babcock*, 469 Mich. 247, 269 (2003).

Generally, hearsay is not admissible as evidence. MRE 802. A defendant has a constitutional right to confront the witnesses who testify against him. US Const, Am VI (Confrontation Clause); *People v. Chambers*, 277 Mich. App. 1, 10 (2007). The Confrontation Clause prevents the admission of ex parte testimonial statements like Steward's statement under oath to the police pursuant to an investigative subpoena because the defendant does not have the opportunity to cross-examine the witness making those statements. *Crawford v. Washington*, 541 U.S. 36, 50–51 (2004). But this right is forfeited if the defendant engages in wrongdoing that prevents the witness from being available. *United States v. Cromer*, 389 F.3d 662, 679 (6th Cir. 2004); *People v. Jones*, 270 Mich. App. 208, 213–214 (2006); *see also Reynolds v. United States*, 98 U.S. 145, 158 (1879). Under MRE 804, hearsay can be admissible if the witness is unavailable because of one of a few specified reasons. Section (b)(6) allows hearsay to be used if the "statement [is] offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."

To determine whether a defendant engaged in or encouraged the wrongdoing that prevented a witness from testifying, the court

reviews the facts. *Reynolds*, 98 U.S. at 159. Here, the prosecution alleges defendant procured the unavailability of Steward by having her murdered. Defendant argues that because the prosecution cannot show who actually killed Juanita Steward, the prosecution cannot establish that defendant and Moore were the ones who made Juanita unavailable to testify at the trial. Recently, the Supreme Court established that for the hearsay exception to apply, the prosecution must show that "defendant intended to prevent a witness from testifying." *Giles v. California*, 554 US 353 (2008). This intent element is crucial; it is not enough for a defendant to make a witness unavailable. *Id*.

Here, there is ample evidence that defendant was concerned about what Steward had seen and what she had said to police. Her son, Terrance, had been in contact with defendant and Moore. On several different occasions, defendant asked him if his mother had seen anything or said anything to the police. Terrance found out that threatening phone calls had been made to his grandmother's house saying that Steward would not make it to trial. Terrance also heard from his child's mother's cousin that Moore and defendant suspected Steward of "snitching."

Tomeka Shaw, Steward's friend, also testified that Steward was receiving threats saying that Steward would not make it to trial. Shaw testified that Steward had told her that Steward knew that Moore and defendant were the murderers. Shaw knew that Steward was being threatened about talking to police. Steward received one of the calls while she and Shaw were outside police headquarters. They had gone there because Steward wanted to visit a friend who was a detective. Steward had put her phone on speaker. Shaw heard Moore tell Steward that he was on his way and that he was going to kill Steward. He said that Steward would not make it to trial. Shaw testified that Steward started carrying a gun. Steward had told Shaw that Terrance had warned her that Moore was going to kill her. Terrance knew this because defendant had told him that Moore was going to kill her and that defendant could not do anything about it. *Id.*

Steward's brother, David Steward, also talked to Steward about the threatening phone calls. David had also witnessed defendant and Moore running from the crime scene. Steward had told David about the threats that she had been getting, that the threats always came from defendant and Moore, and that Steward was afraid of both of

> them. David testified that defendant and Moore were afraid that Steward would talk to the police or testify at trial.
>
> Steward herself was afraid to talk to police because she thought that defendant and Moore would harm her. In her statement to the police, she said that she would only sign her statement if "the prosecutor agrees I won't be seen by Mark, Edward and Mario. I don't want them to know it's me because I'm afraid they'll kill me and my family." She was saying that she didn't want defendant and Moore to know that she was the one who had identified them; the only reason that defendant and Moore would have to kill her would be to prevent her from testifying at trial.
>
> The standard for showing whether a court has abused its discretion by inappropriately allowing the admission of evidence is whether an objective person would find that there was no excuse for the admission of that evidence. *People v. Bauder*, 269 Mich. App. 174 (2005). Here, the court did not abuse its discretion. An ordinarily objective person could find, from the facts, that defendant was involved in preventing Steward from testifying at trial. He knew that Steward was a witness. He knew that Moore was planning on killing her. He had called Steward's son to tell him that Steward would not make it to trial. While the facts do not show exactly how defendant was involved, or who actually killed Steward, it is not necessary to prove with that level of specificity. The statute states that the exception applies if the defendant encouraged the wrongdoing that prevented the witness from testifying. Moreover, there is enough evidence to show that defendant, at the very least, did encourage the wrongdoing that prevented the witness from testifying. Therefore, we conclude that the trial court properly exercised its discretion.

*Winston*, 2011 WL 1377074, at *2–4 (footnote-citations returned to body).

This decision did not unreasonably apply clearly established Supreme Court law. The Sixth Amendment establishes a criminal defendant's right to confront witnesses testifying against him—primarily through cross-examination. U.S. Const. amend. VI. This right extends to state proceedings. *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

In *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), the Supreme Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the person making

8

the out-of-court statement is unavailable to testify and the defendant had a prior opportunity for cross-examination. That ban is not absolute, though: a criminal defendant "who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Davis*, 547 U.S. at 833–34. *See also Crawford*, 541 U.S. at 62 (stating that "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds"). For such testimony to be admitted, the defendant must have "intended to prevent a witness from testifying." *Giles v. California*, 554 U.S. 353, 361 (2008). That is, if he "has in mind the particular purpose of making the witness unavailable." *Id.* at 367. At minimum, then, the prosecutor can establish forfeiture by wrongdoing if it demonstrates by a preponderance of the evidence that (1) the defendant intended to render the declarant unavailable to testify and engaged in conduct designed to ensure the end or (2) actually rendered the declarant unavailable. *Id. See also Beckett v. Ford*, 384 F. App'x 435, 448 (6th Cir. 2010); *United States v. Carson*, 455 F.3d 336, 363–64 (D.C. Cir. 2006) (explaining that the forfeiture rule applies "with equal force" to a defendant whose co-conspirators rendered the witness unavailable).

Here, the evidence presented at the pretrial hearing allowed the trial court to reasonably determine by a preponderancy of the evidence that petitioner conspired with Moore to have Steward killed to prevent her from testifying at trial. At the pretrial hearing, Terrance Steward testified that he was best friends with petitioner. Rule 5 Materials Ex. 3 p. 13. On the day of the shooting, his mother told him that petitioner and Moore ran past her yard after the shooting carrying guns and dressed in black. *Id.* at 14–15. Steward briefly spoke with petitioner as he ran past, so he knew Steward saw them. *Id.* Terrance testified that someone telephoned his grandmother (and others) saying that Steward was "not going to make it to trial." *Id.* at 17–18, 28,

9

43. Steward told him that she saw co-defendant Moore repeatedly drive past her house. *Id.* at 37–38, 41.

Shaw testified at the hearing that she was good friends with Steward. Steward told Shaw that she was getting threatening calls and was being threatened by petitioner and Moore. *Id.* at 53–56, 64. One call came while Shaw was with Steward outside police headquarters. Steward put the call on speaker, and Shaw heard Moore say that he was on his way to kill Steward, and that she would not live to testify. *Id.* at 59–62. David Steward also saw petitioner and Moore run past the house after the shooting. Steward talked to David after the murder about getting threats. Steward told her brother that petitioner and Moore were the ones who were threatening her because she was the only person who could send them to jail. Id. at 71–73. Other members of the community heard these same threats. *Id.* at 61–63.

There was no direct evidence presented at the pretrial hearing that petitioner either acting alone or in concert with Moore killed Steward. Nevertheless, the substantial circumstantial evidence included repeated threats to kill Steward, like the statements that "she would never make it to court." This evidence supported a finding that petitioner was responsible for the witness's unavailability. *See, e.g.*, *United States v. Stewart*, 485 F.3d 666, 671 (2nd Cir. 2007) ("Both the existence of a conspiracy and a given defendant's participation in it with the requisite knowledge and criminal intent may be established through circumstantial evidence."). And though some of the evidence presented consisted of hearsay statements—such as the testimony by Steward's relatives that they heard that Steward was being threatened by petitioner and Moore—the trial court was allowed to consider such hearsay in determining who was threatening the victim. *United States v. Mastrangelo*, 693 F.2d 269, 273 (2nd Cir. 1982).

The evidence admitted at the hearing allowed the trial court to find by a preponderance of the evidence that petitioner was responsible for Steward's unavailability and that she was murdered to prevent her from testifying at trial. The Michigan Court of Appeals's decision that petitioner's confrontation rights were not violated by admission of Steward's investigative subpoena testimony because he forfeited them by wrongdoing was not an unreasonable application of clearly established Supreme Court law. Petitioner has failed to demonstrate that he is entitled to habeas relief with respect to his first claim.

### B. Second Through Sixth Claims Procedurally Defaulted

Petitioner's remaining claims were presented to the state courts in petitioner's motion for relief from judgment and the appeal that followed. The trial court denied the motion for relief from judgment, relying in part on Michigan Court Rule 6.508(d)(3). Rule 5 Materials Ex. 11 p. 8. The Michigan Court of Appeals subsequently denied petitioner relief with respect to these claims because he alleged "grounds for relief that could have been raised previously and he has failed to establish good cause for failing to previously raise the issues, and has not established that good cause should be waived. MCR 6.508(D)(3)(a)." *Id.* at Ex. 12 p. 1.

Ordinarily, the Court will not review a petitioner's claims if he "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "To determine whether the state court rejected a petitioner's claim on procedural grounds, a court looks to 'the last reasoned state court opinion to determine the basis for the state court's rejection of the petitioner's claim.'" *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012) (quoting *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc)). Further, "[w]here there has been one reasoned state judgment rejecting a federal claim,

later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Guilmette*, 624 F.3d at 291–92 (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

Here, the Michigan Court of Appeals's order denying petitioner leave to appeal was the last reasoned state court opinion rejecting petitioner's second through sixth claims. The state appellate court explicitly rejected these claims under Michigan Court Rule 6.508(D)(3), "which is an independent and adequate state ground sufficient for procedural default that required [petitioner] to raise these claims during his direct appeal." *Amos*, 683 F.3d at 733. Thus, the claims are procedurally defaulted and "review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

1. Ineffective Assistance of Appellate Counsel

Petitioner's second claim is that appellate counsel was ineffective for failing to raise his post-conviction review claims on direct appeal, which, in his view, constitutes cause to excuse his procedural default.

Appellate counsel, however, is not required "to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). Where appellate counsel "presents one argument on appeal rather than another . . . the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present'" to establish

ineffective assistance of counsel. *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)). Because the claims petitioner raised on post-conviction review are not "clearly stronger" than the one raised by appellate counsel on direct review, petitioner fails to show that appellate counsel was ineffective and, therefore, petitioner cannot demonstrate cause for his default.

2. Ineffective Assistance of Trial Counsel

Petitioner asserts in his third claim that his trial attorney was ineffective for failing to call two witnesses in his defense case: Margaret Jackson and Brittany Bailey. Petitioner claims both women were at or near the scene of the shooting, and that their description of the perpetrators did not match petitioner's description.

It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). "In any ineffectiveness case, a particular decision to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

Petitioner's third claim is not clearly stronger than the claim raised by appellate counsel on direct appeal. First, trial counsel knew about Jackson and Bailey because they were included on his witness list. Even so, counsel reasonably did not call Jackson or Bailey because their testimony would not have provided any substantial benefit to the defense. Neither woman's testimony would have excluded petitioner or Moore as being the perpetrators. Jackson told police

13

that she saw a black male, 6'0 to 6'2, with a slender build, and another dark-skinned male who was about 5'11" or 5'10. Moore is 6'1" and 170 lbs., and petitioner is 5'8" feet and 155 lbs. Rule 5 Materials Ex. 10. Jackson's descriptions were not far off the mark. Her description of the first male was consistent with Moore's height and build and her description of his companion was close to petitioner's height. Bailey stated that she merely saw two black males running from the scene, but she could give not further description. *Id.* Her testimony would not have benefitted the defense.

Petitioner fails to demonstrate that this ineffective-assistance-of-trial-counsel claim is clearly stronger than the Confrontation Clause claim raised on direct appeal. Thus, his appellate counsel was not ineffective for failing to raise it, and his procedural default is not excused.

### 3. Failure to Warn Witness of Fifth Amendment Rights

Petitioner's fourth claim asserts that the trial court erred in failing to advise prosecution witness Charles Spivey of his Fifth Amendment Right against self-incrimination prior to his trial testimony. Judging from the record, Spivey displayed some initial reluctance to testify. Petitioner argues that had the trial court advised Spivey of his Fifth Amendment rights at the beginning of his testimony, he would have invoked his privilege and not testified against petitioner.

This claim is not clearly stronger than the claim raised on direct review because petitioner had no standing to assert another witness's Fifth Amendment rights. "[T]he immunity provided by the Fifth Amendment against self-incrimination is personal to the witness himself . . . , and not that of the party on trial." *McAlister v. Henkel*, 201 U.S. 90, 91 (1906). *See also Rogers v. United States*, 340 U.S. 367, 371 (1951) ("[T]he decisions of this Court are explicit in holding that the privilege against self-incrimination is solely for the benefit of the witness and is purely a personal privilege of the witness.") (quotation marks and footnotes omitted); *Goldstein v. United*

14

*States*, 316 U.S. 114, 121 n.11 (1942) ("The privilege against self-incrimination afforded by the Fifth Amendment is personal to the witness."). Petitioner has therefore not demonstrated cause for his failure to raise this claim on direct appeal.

### 4. Failure to Appoint Expert Witness

Petitioner asserts that the trial court erred in failing to appoint an expert witness to testify regarding the caliber of one of the bullets used in the shooting. During closing arguments, the court and the attorneys discussed whether .40 caliber casings and 10 mm casings are the same. Rule 5 Materials Ex. 5. pp. 206–09. The prosecutor and the court believed that the police expert's report indicated that the two were equivalent, but defense counsel argued that the report was unclear. *Id.* The court said that on the next trial date, defense counsel could raise the issue again if he wished. *Id.* But when the court brought it up the following morning, defense counsel said he would not pursue it further. *Id.* at Ex. 6 pp. 3–4. Petitioner asserts that the issue should have been pressed by defense counsel, and he speculates that an expert witness might have given testimony favorable to the defense regarding the caliber of the shell casings in question.

This claim is baseless, and appellate counsel was not ineffective for failing to raise it on direct appeal. In *Caldwell v. Mississippi*, 472 U.S. 320, 323, n.1 (1985), the Supreme Court stated that when a defendant offers little more than undeveloped assertions that the testimony of a criminal investigator, fingerprint expert, or ballistics expert would benefit the defense, a court's denial of those requests does not deprive him of due process. Here, petitioner offers no evidence to support his notion that an expert witness would have opined that the casing was a .40 caliber casing and was inconsistent with the 10mm handgun petitioner was seen with. Regardless, the trial court found petitioner guilty based on eyewitnesses' testimony, testimony of the people who saw

petitioner and Moore holding guns after the murder, and Spivey's testimony that petitioner claimed credit for the crimes. The court noted that the casings found at the scene could not be matched to the handgun later seized by police. Rule 5 Materials Ex. 6 p. 30. Appellate counsel was not ineffective for failing to raise this claim on direct review and, therefore, the procedural default is not excused.

5. Sufficiency of the Evidence

Petitioner asserts that the evidence presented at trial was insufficient to support his conviction. He argues that the only witnesses who place him at the scene testified reluctantly and were otherwise not credible.

In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard is extremely deferential. The Court may not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Petitioner's claim ignores the sufficiency-of-the-evidence standard. Both Steward and her brother saw petitioner and Moore running from the location of the shooting carrying guns. Other witnesses saw petitioner and Moore at a house immediately after the shooting wearing black and holding guns. Spivey testified that petitioner took credit for the crime. Based on this evidence, and resolving credibility issues in favor of the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This claim was not clearly

stronger than the one raised by appellate counsel on direct appeal and, therefore, petitioner's procedural default is not excused.

Accordingly, petitioner's state post-conviction review claims are barred from review by petitioner's state court procedural default of failing to raise them on direct review, and petitioner had failed to demonstrate cause to excuse the default.

## C. Conclusion

As all of petitioner's claims are without merit or barred from review,

IT IS ORDERED that the petition for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied because petitioner has failed to make a substantial showing of the denial of a federal constitutional right, 28 U.S.C. § 2253(c)(2), and leave to appeal *in forma pauperis* is denied because the appeal would be frivolous, 28 U.S.C. § 1915(a)(3).


Dated: June 14, 2018             s/Bernard A. Friedman
Detroit, Michigan              BERNARD A. FRIEDMAN
                                        SENIOR UNITED STATES DISTRICT JUDGE


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 14, 2018.

                                                       s/Johnetta M. Curry-Williams
                                                       Case Manager